UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| GARLINA SUMO, <br><br> Plaintiff, <br><br> v. <br><br> PSL ASSOCIATES, LLC, <br><br> Defendant. | CASE NO. 25-5436-BHS <br><br> ORDER |

THIS MATTER is before the Court on Plaintiff Garlina Sumo's motion to remand, Dkt. 9.

On April 15, 2025, Sumo filed a class action in Pierce County Superior Court alleging Defendant PSL Associates had "at times" committed wage and hour violations against its hourly employees in Washington. Dkt. 1-2. Sumo served PSL on April 17, 2025. Dkt. 1-6.

On May 19, 2025, PSL removed the case to this Court. Dkt. 1. It asserted the case met Class Action Fairness Act (CAFA) removal requirements because there are at least 1,500 putative class members, the parties are diverse, and the amount in controversy exceeds $5 million. *Id.* at 4–5. It assumed a 30% violation rate for missed meal periods

ORDER - 1

and 33% for missed rest periods, arriving at approximately $4.1 million before attorneys' fees. *Id.* at 7–8. It added to this figure $1 million (25%) in attorneys' fees. *Id.* In a supporting declaration, its Senior Vice President of People & Culture, Katheryn Pigott, asserted PSL's records reflect "the putative class of at least 1,500 non-exempt individuals worked approximately 55,403 workweeks between" April 2022 and May 2025. Dkt. 2.

Sumo moves to remand, arguing the amount in controversy does not meet CAFA's $5 million threshold. Dkt. 9. She argues PSL's notice of removal is speculative, relying on unsupported assumptions regarding the $19.46 hourly wage rate and the number of missed meal and rest breaks. *Id.* at 10–12. She cites to various cases in this Circuit to support her assertion that assuming a 20% violation rate is appropriate when a defendant's calculation of the amount in controversy is unsupported by evidence, based on the "at times" language in her complaint. *Id.* at 12–13. She also challenges estimating attorneys' fees at 25%. *Id.* at 15.

PSL responds that Sumo does not provide any evidence or reasoned argument of her own. Dkt. 10 at 12–13. It filed a supplemental declaration by Pigott, who asserts PSL's work week spans all seven days. Dkt. 11.

## I.     DISCUSSION

Putative class actions are removable under CAFA when the aggregate amount in controversy exceeds $5,000,000 for the entire class, exclusive of interest and costs. 28 U.S.C. § 1332(d)(2). There is no presumption against removal for cases removed under CAFA. *See Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 89 (2014) ("No antiremoval presumption attends cases invoking CAFA, a statute Congress enacted

to facilitate adjudication of certain class actions in federal court."). Under CAFA, the removing defendant retains the obligation to demonstrate by a preponderance of the evidence that the jurisdictional amount in controversy is met in order to sustain its removal in the face of a motion to remand. *Rodriquez v. AT&T Mobility Servs., LLC*, 728 F.3d 975, 981 (9th Cir. 2013).

Though the burden remains with the defendant, it is not a daunting one. The defendant need only plausibly allege the jurisdictional amount exceeds $5 million. *Perez v. Rose Hill Co.*, 131 F.4th 804, 808 (9th Cir. 2025) (citing *Dart Cherokee*, 574 U.S. at 89). The defendant may "rely on a chain of reasoning that includes assumptions to calculate the amount in controversy." *Id.* (citing *Arias v. Residence Inn by Marriott*, 936 F.3d 920, 925 (9th Cir. 2019)) (cleaned up). While the assumptions cannot be "pulled from thin air," they may be based on the language of the complaint and "do not necessarily need to be supported by evidence." *Id.* (cleaned up) (citing *Arias*, 936 F.3d at 925; *Ibarra*, 775 F.3d at 1199). It is the Court's task to determine if the defendant's "'reasoning and underlying assumptions are reasonable.'" *Id.* (quoting *Jauregui v. Roadrunner Transp. Serv., Inc.*, 28 F.4th 989, 993 (9th Cir. 2022)).

Evidence is required only when the plaintiff or the Court questions the defendant's jurisdictional allegations. *Id.* The plaintiff can challenge the amount in controversy by way of a "facial" or "factual" attack on the defendant's jurisdictional allegations. *Harris v. KM Indus., Inc.*, 980 F.3d 694, 699 (9th Cir. 2020). A facial attack accepts the defendant's allegations as true but challenges their sufficiency to meet the amount in controversy. *Id.* A factual attack, on the other hand, "challenges the truth of the . . .

jurisdictional allegations by making a reasoned argument as to why any assumptions on which they are based are not supported by evidence." *Id.* at 700 (citing *Salter v. Quality Carriers*, 974 F.3d 959, 964 (9th Cir. 2020). When the plaintiff "mounts a factual attack, the burden is on the defendant to show, by a preponderance of the evidence, that the amount in controversy exceeds the $5 million jurisdictional threshold." *Id.* (citing *Ibarra v. Manheim Inv., Inc.*, 775 F.3d 1193, 1197 (9th Cir. 2015)). Both parties may submit evidence outside the complaint, such as affidavits or declarations, in support of their position. *Ibarra*, 775 F.3d at 1197–98. When the plaintiff offers a "different, better assumption, the Court "should consider the claim under the better assumption." *Jauregui*, 28 F.4th at 996. "But an assumption is not unreasonable simply because another equally valid assumption may exist." *Perez*, 141 F.4th at 810.

      Courts have varied approaches to estimating a defendant's violation rate when determining the amount in controversy. *Young v. Lab'y Corp. of Am.*, No. 3:23-cv-05892-DGE, 2024 WL 689605, at *4–5 (W. D. Wash. Feb. 20, 2024). In "the context of wage violations, phrases like 'at times' generally imply the illegal practices in question did not happen consistently." *Id.* at *4. In this Circuit, courts have frequently found a 20% violation rate "broadly consistent" with "at times" language in a complaint, particularly where "Defendants have not submitted evidence that would justify a higher rate." *Id.* at *5 (citing *Jauregui*, 28 F.4th at 996). *See Chavez v. Pratt (Robert Mann Packaging), LLC*, No. 19-cv-00719-NC, 2019 WL 1501576, at *3.

      Sumo factually attacks PSL's assumptions and argues a 20% violation rate is a more reasonable assumption here. The Court agrees. Pigott's declarations do not explain

why PSL assumed a 30–33% violation rate in calculating the amount in controversy. Dkts. 2, 11. Pigott merely provides the number of putative class members and the number of work weeks in the period relevant to Sumo's claims. *Id.* PSL's assumed violation rates appear be "pulled from thin air," without "reasonable ground underlying them." *Ibarra*, 775 F.3d at 1199. Based on the "at times" language in the complaint, the Court concludes 20% is a more reasonable violation rate.[1]

Accordingly, PSL's exposure for Sumo's claims is $3,271,229.80, before attorneys' fees. *See* Dkt. 9 at 17 (calculating the total amount in controversy after applying a 20% violation rate).[2]

When the statute at issue "provides for the recovery of attorneys' fees, prospective attorneys' fees must be included in the assessment of the amount in controversy." *Arias*, 936 F.3d at 922. The defendant must prove by a preponderance of the evidence the amount of attorneys' fees at stake. *Fritsch v. Swift Transp. Co. of Ariz., LLC*, 899 F.3d 785, 796 (9th Cir. 2018). The Court may also apply its own expertise "in determining the number of hours reasonably expended on the litigation multiplied by a reasonably hourly

---

[1] This Court and others in this Circuit have embraced a 20% violation rate when the defendant has used the phrase "at times," or similar language in the complaint. *See, e.g., Autozone v. Reynolds*, No, 25-5328, Dkt. 24 (Aug. 25, 2025). However, in determining a total violation rate, even 20% could be considered arbitrary. Nonetheless, it has become somewhat of an accepted benchmark. Accordingly, a removing defendant needs to support, at a minimum, a violation rate above 20% with persuasive evidence rather than mere speculation. Otherwise, the 20% mark will over time creep up with no rational end in sight.

[2] PSL does not challenge Sumo's calculation of the amount in controversy assuming a 20% violation rate. Dkt. 10.

ORDER - 5

rate" based on its "own knowledge of customary rates and . . . reasonable and proper fees." *Id.* (internal quotation marks omitted).

Sumo argues attorneys' fees should not be added to the amount in controversy calculation because PSL did not provide a lodestar-based estimate or evidence from the pleadings. Dkt. 9 at 16. While Sumo is correct that the Ninth Circuit has declined to adopt a per se rule regarding 25% attorneys' fees in class actions, she offers no alternative. *Arias*, 936 F.3d at 928. District courts in the Circuit have concluded that a 25% fee award is reasonable in similar wage and hour CAFA cases. *Anderson v. Starbucks Corp.*, 556 F.Supp.3d 1132, 1138 (N.D. Cal. 2020). This is consistent with the Court's own experience calculating attorneys' fees in such cases.

Including 25% attorneys' fees to $3,271,229.80, PSL's total exposure is $4,089,037.25.

The Court concludes PSL has not, by a preponderance of the evidence, demonstrated that the amount in controversy exceeds $5 million based on reasonable assumptions.

Sumo's motion to remand, Dkt. 9, is therefore **GRANTED**.

PSL's motion to compel arbitration, Dkt. 13, is **DISMISSED without prejudice** for refiling in state court.

Sumo's cross motion, Dkt. 18, to stay PSL's motion to compel arbitration pending resolution of her motion to remand, is **DENIED as moot**.

**IT IS SO ORDERED.**

//

ORDER - 6

Dated this 11th day of September, 2025.

*[signature]*

BENJAMIN H. SETTLE
United States District Judge